UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X

JONATHAN NNEBE, et al,

                                              Plaintiffs,

                  -Against-                              06-CV-4991 (RJS)

MATTHEW DAUS et al.,

                                              Defendants.

X----------------------------------------------------------------X
X----------------------------------------------------------------X

ANTHONY STALLWORTH, et al,

                                              Plaintiffs,

                  -Against-                              17-cv-7119 (RJS)

MEERA JOSHI , et al,

                                              Defendants.

X----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

| | | |
|---|---|---|
| Daniel L. Ackman | David T. Goldberg | Shannon Liss-Riordan |
| Law Office of Daniel L. Ackman | Donahue, Goldberg, Weaver & Littleton | Lichten & Liss-Riordan, P.C. |
| 77 Water Street, 8th Floor | 99 Hudson Street, 8th Floor | 729 Boylston Street, Suite 2000 |
| New York, NY 10005 | New York, NY 10013 | Boston, Massachusetts 02116 |
| Tel: 917-282-8178 | Tel: 212.334.8813 | Tel: 617-994-5800 |
| d.ackman@comcast.net | david@donahuegoldberg.com | sliss@llrlaw.com |

*Attorneys for Plaintiffs*

**September 11, 2020**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

    I.      DEFENDANTS' ARGUMENTS CONCERNING
           INJUNCTIVE RELIEF ARE IRRELEVANT TO
           THIS MOTION AND MERITLESS IN ANY EVENT ................................. 3

        A.  Plaintiffs Have Standing to Obtain an Injunction ......................................3

        B.  The TLC has not Complied with the Second
            Circuit's Decision ......................................................................................4

    II.     INDIVIDUALIZED DAMAGE ISSUES DO NOT DEFEAT
           CERTIFICATION ........................................................................................ 5

    III.    DEFENDANTS' BELATED CLAIMS OF SHORTCOMINGS
           IN PLAINTIFFS' RULE 26 DISCLOSURES ARE MERITLESS
           AND COULD NOT BAR RECOVERY OF DAMAGES (OR
           CLASS CERTIFICATION) IN ANY EVENT ................................................ 7

    IV.    BOTH THE PROPOSED CLASS REPRESENTATIVES AND
           THE PROPOSED COUNSEL ADEQUATELY REPRESENT
           THE CLASS ................................................................................................. 8

        A.  The Proposed Class Representatives are Typical
            and Adequate ..............................................................................................8

        B.  With Respect to Adequacy of Counsel, Defendants'
            Attacks on Attorney Ackman are Unfounded and Defendants
            Do Not Dispute that Liss-Riordan and Goldberg Will
            Adequately Represent the Class ................................................................9

CONCLUSION ................................................................................................................10

# TABLE OF CASES

**Case**                                                                                                                          **Page(s)**

*Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897 (2d Cir. 1998) ........................................6

*Betances v. Fischer*, 403 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................7

*Bishop v. New York City HPD*, 141 F.R.D. 229 (S.D.N.Y. 1992) ......................................5

*Boyland v. Wing*, 2001 WL 761180 (E.D.N.Y. 2001) .........................................................4

*Carey v. Piphus*, 435 U.S. 247 (1978) ..................................................................................6

*Cummings v. Connell,* 316 F.3d 886 (9th Cir. 2003) ...........................................................1

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) ..................................................................7

*Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973) ..............................................................4, 5

*Gerstein v. Pugh*, 420 U.S. 103 (1975) .................................................................................3

*In re Drexel Burnham*, 960 F.2d 285 (2d Cir. 1992) ............................................................9

*In re Nassau Cty. Strip Search Cases*, No. 99-CV-2844 (DRH),
    2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ...................................................................1

*In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38 (S.D.N.Y. 2012) ................................................9

*Jane B. v. NYC Dep't Soc. Servs,* 117 F.R.D. 64 (S.D.N.Y. 1987) .....................................5

*Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) ............................................3

*L-3 Communications Corp. v. OSI Systems, Inc.,* No. 02 Civ, 9144,
    2006 WL 988143 (S.D.N.Y. April 13, 2006) ..................................................................7

*Liberty Media Corp. v. Vivendi Universal*, S.A., 923
    F. Supp. 2d 511 (S.D.N.Y. 2013) ....................................................................................6

*Marisol A. By Forbes v. Giuliani*, 126 F.3d 372 (2d. Cir 1997) ..........................................9

*Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) .....................................................................3

*Opperman v. Path, Inc.*, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ...............................1

*Outley v. City of New York,* 837 F.2d 587 (2d Cir.1988) .....................................................7

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) ............................................1, 5

*Salazar v. King*, 822 F.3d 631 (2d Cir. 2016) .................................................................................3

*Seijas v. Republic of Argentina,* 606 F.3d 53 (2d Cir. 2010) ............................................................1

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...............................................................6

*Warren v. Pataki*, 823 F.3d 125 (2d Cir. 2016) ................................................................................6

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

Cadigan et al., "Implementing Risk Assessment in the Federal
    Pretrial Services System," Federal Probation, Volume 75 Number 2 ..........................6

## PRELIMINARY STATEMENT

As the Second Circuit decision in this case strongly suggests, and as this Court appeared to recognize at the recent hearing, class certification is eminently appropriate in this case. Defendants' misguided opposition to plaintiffs' request for class certification can be summed up through its assertion on page 1 of its brief that "Plaintiffs' motion also seeks injunctive and compensatory relief for the purported class members." Opp. Br. at 1. It does not. The only question before the Court on this motion whether a class may be certified. Whether plaintiffs are entitled to injunctive relief (a forward-seeking remedy) is the subject of another pending motion. Whether plaintiffs are entitled to compensatory relief (a backward-looking remedy), and how it would be calculated and determined, is not a subject of this motion and not something the Court need decide at this juncture. In their motion, plaintiffs have set forth several potential avenues for damages to be addressed in a later stage, but it is black-letter law that individualized damages inquiries do not defeat class certification. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010). Moreover, as plaintiffs have noted, and defendants do not dispute, all class members in this case would be entitled at least to nominal damages. *See* Opp. Br. at 18 n. 13. And courts have recognized that where nominal damages are available to an ascertainable class, class certification is appropriate.[1]

Defendants' argument that a class is not appropriate because of the "wide variety of individual factual circumstances" of class members utterly ignores the fact that the Second

---

[1] *See, e.g., Cummings v. Connell,* 316 F.3d 886 (9th Cir. 2003) (affirming class certification where class members were, at most, entitled to nominal damages for the due process violation), 402 F.3d 936, 944 (9th Cir. 2005); *Opperman v. Path, Inc.*, 2016 WL 3844326, at *15 (N.D. Cal. July 15, 2016) (collecting cases certifying classes where nominal damages were available); *In re Nassau Cty. Strip Search Cases*, No. 99-CV-2844 (DRH), 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) (allowing class certification where all class members were entitled to nominal damages for an already-established constitutional violation).

Circuit has already determined that these drivers have all suffered the same constitutional violation. The varying circumstances that Defendants raise go to the amount of damages to which particular class members might be entitled.[3] They do not challenge that a class action is the superior method of adjudicating this case.

Indeed, defendants have not even disputed the propriety of the Court appointing a special master to address any individualized damages questions, as plaintiffs have proposed. Defendants state merely that "[a] referral to a special master is unwarranted based on the arguments herein that plaintiffs have failed to demonstrate that a class can be certified." Opp. Br. at 24. This objection is circular: plaintiffs have proposed the appointment of a special master as a way to handle individualized damages assessments if needed, and defendants object to the appointment on the ground that a class is not warranted because individualized damages issues exist.

Defendants' opposition ignores the overwhelming clarity that this case should now be certified as a class action, focusing instead largely on the question of whether plaintiffs and class members are entitled to injunctive relief, the individualized nature of compensatory damages, and unwarranted attacks on the adequacy of the lead plaintiffs and one of the plaintiffs' lawyers. The Court should reject these arguments and certify a class in this case.

---

[3] Defendants' examples of drivers who may not be entitled to compensatory damages, *see* Opp. Br. at 2-3, simply reinforce the fact that there may be differences in the amount of damages a particular plaintiff would be awarded, and that some have may have no lost income to compensate. Meanwhile, defendants ignore that the vast majority of class members are likely entitled to compensatory damages. As the Second Circuit noted, 75-90% of the drivers were ultimately reinstated after their criminal charges were resolved, it having been determined that they pose no real threat. While defendants dispute whether it can be presumed that all of these drivers are entitled to compensatory damages, clearly thousands of these drivers would be so entitled. Denying class certification would, as a practical matter, leave the vast majority of these drivers without any remedy.

## I. DEFENDANTS' ARGUMENTS CONCERNING INJUNCTIVE RELIEF ARE IRRELEVANT TO THIS MOTION AND MERITLESS IN ANY EVENT

### A. The Court's Power to Award Class-Wide Injunctive Relief Is Beyond Dispute

Defendants contend that neither current nor former drivers have standing to seek injunctive relief, an argument defendants never raised in opposing plaintiffs' motion directly seeking that remedy, ECF # 456.[4] In any event, as the Court of Appeals explained in *Salazar v. King*, there is an established exception to the mootness doctrine that applies when would-be class representatives seek to litigate "inherently transitory" claims so that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." 822 F.3d 61, 73 (2d Cir. 2016) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010), and citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975), and other cases). Like the students in *Salazar*, the named plaintiffs here were reinstated between two and four months from their suspensions, which is not enough time for a district court to certify a class. Meanwhile, there are more than 100,000 for-hire-vehicle drivers licensed by the TLC. Though only a small fraction are likely to be arrested, that is still enough to ensure that there will be "a constant class of persons suffering the deprivation complained of in the complaint." *Salazar*, 822 F.3d at 73.[5]

---

[4] The Taxi Workers Alliance unquestionably has standing to seek injunctive relief. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 84 n.2 (2d Cir. 2012) ("where at least one plaintiff has standing, jurisdiction is secure").

[5] This principle likely was operating when the district court in 2005 certified a class for an injunctive remedy for the procedural due process claim in *Krimstock*, though the representative plaintiffs' vehicles had been seized in 1999, and they presumably had no basis for expecting they would imminently be subject to further seizures. *See Krimstock v. Kelly* order certifying the class. http://www2.law.columbia.edu/vehicleseizure/documents/Krimstock_Order_12_6_05.pdf

3

### B. The TLC has not Complied with the Second Circuit's Decision

Defendants also contend that the Court should not certify a class seeking injunctive relief because they have "come into compliance with the Court's mandate." Opp. Br. 10-11. But this assertion is the subject of a separate motion, and defendants' claims of "compliance" do not withstand scrutiny. ECF # 453. As detailed in prior motion papers, the TLC has not initiated or announced any rule changes to comply with the Second Circuit's ruling; it has bridled at any rule change that would restrain chair review; it has not required that ALJ rulings be anonymous; and it has not assured that hearing decisions are rendered promptly.[6]

Despite all of these failures, defendants assert full compliance based on a declaration by TLC lawyer Mohammed Akinlolu, who has no supervisory authority over the agency and no role in adjudicating suspensions and who admits that his declaration is not based solely on personal knowledge. Mr. Akinlolu does claim to supervise TLC prosecutors so he should know that these prosecutors continue to maintain in every single case that the driver's licensure during the pendency of criminal charges would pose a direct and substantial threat—despite the high likelihood of error. Whatever the merits of Mr. Akinlolu's declaration, it does not permit defendants to unilaterally claim compliance.

That leaves defendants to argue, based on *Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973), that certification should be denied as "unnecessary." But as decades of intervening decisions establish—and defendants' brief grudgingly acknowledges, Opp. Br. 10, 11— "*Galvan* and its progeny stand for a very narrow principle." *Boyland v. Wing*, 2001 WL 761180, at *12 (E.D.N.Y. 2001). And *all* the factors that defeat *Galvan* are present here.

---

[6] While defendants point to the new form of notice that the TLC recently drafted, it did not do so until approximately six months after the Second Circuit ruled.

4

First, despite rote assurances of "across-the-board" application, defendants' refuse to commit that even the present chair (let alone future chairs or designees) will give *future* ALJ determinations the same "deference" they claim she is affording ALJs at the moment. And, while defendants insist, that all suspended drivers would benefit similarly, they insist elsewhere that plaintiffs' claims lack commonality. *See, e.g.,* Opp. Br. 1, 2 4, 5, 6 & n.2. *See Bishop v. New York City HPD*, 141 F.R.D. 229, 240-41 (S.D.N.Y. 1992) (rejecting *Galvan* argument, because it was "plainly inconsistent for Defendants to argue that any relief granted … will be applied to benefit every member of the class, while at the same time contest[ing] the existence of commonality and typicality"). Moreover, "class certification ceases to be 'an unnecessary 'formality'"—and *Galvan* is "wholly inapplicable"—when the relief sought goes beyond a discrete prohibition, and instead would "require defendants to take affirmative steps to implement standards that comport with the mandates of federal [law]" or to "upgrade a constitutionally insufficient practice." *Jane B. v. NYC Dep't Soc. Servs,* 117 F.R.D. 64, 71-72 (S.D.N.Y. 1987).

## II. INDIVIDUALIZED DAMAGE ISSUES DO NOT DEFEAT CERTIFICATION

To establish predominance, plaintiffs need only demonstrate that all class members' damages are attributable to a uniform theory of liability. *See Roach*, 778 F.3d at 407. Defendants do not dispute that plaintiffs have made that showing. Defendants instead focus on various issues that could lead to individualized assessments of compensatory damages. But, as noted, defendants do not dispute that a special master could be used to calculate damages, including if necessary, by holding individual hearings.[8]

---

[8] The special master could hold "bellwether" hearings for various categories of class members and, if that does not lead to resolution of the case on a classwide basis, the master could proceed to hold individualized hearings.

Alternatively, the Court or a special master could employ other techniques to assess damages (and, again, the Court need not determine in deciding this motion which technique is best).[9] For example, the Court (or special master) could recognize that any driver who was ultimately reinstated at least presumptively did not pose a substantial safety threat in the interim either.[10] A class member's entitlement to compensation could also be established through the kinds of evidence that underly the numerical risk assessments widely used by federal and state courts in deciding bail. *See* Cadigan et al., "Implementing Risk Assessment in the Federal Pretrial Services System," Federal Probation, Volume 75 Number 2. Or a class member's damages could be based on a statistical application of the likelihood of reinstatement from more recent hearings (since the Second Circuit's decision, roughly 70% of drivers were reinstated). In

---

[9] Defendants argue that, to deserve compensatory damages, a driver would have to prove that he would have been reinstated. It is telling that, even with the modest changes that the TLC has made since the Second Circuit rule, a large majority of drivers who requested hearings have prevailed. Akinlolu Decl. ¶ 11. Thus, it is evident that, with a constitutional process in place, most class members would have been reinstated and thus are entitled to compensatory damages. Defendants also argue that, to deserve compensatory damages, a driver should also have to prove that he would have requested a hearing. Opp. Br. 15. Of course, as the Court of Appeals found, drivers were aware the hearings were futile, so it is not surprising that few participated. 931 F.3d at 73 n.7 & 89. That said, defendants cite no case that that says a plaintiff who has been denied due process must *also* prove that he would have taken advantage of a fair hearing if one had been available. None of the leading cases on due process and damages make that suggestion. *See,* e.g., *Carey v. Piphus*, 435 U.S. 247 (1978); *Warren v. Pataki*, 823 F.3d 125, 143 (2d Cir. 2016).

[10] Defendants argue that damages cannot be awarded to drivers because the TLC does not have records of all of their earnings. Just this week, the Third Circuit rejected the argument that class certification may be denied on the ground that neither the defendant, nor class members, had pertinent records. *Hargrove v. Sleepy's LLC*, No. 19-2809, 2020 WL 5405596, at *9–10 (3d Cir. Sept. 9, 2020). Moreover, it is well established that damages need not be proven exactly, and reasonable estimates may be used where exact evidence is lacking. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016); *Liberty Media Corp. v. Vivendi Universal*, S.A., 923 F. Supp. 2d 511, 525-26 (S.D.N.Y. 2013). Proving damages with "reasonable certainty" is sufficient. *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 907-08 (2d Cir. 1998). This is not a basis to deny class certification.

sum, there are a number of methods by which compensatory damages could be determined. Meanwhile, emotional and punitive damages can be assessed on a classwide basis. *Betances v. Fischer*, 403 F. Supp. 3d 212, 238 n. 18 (S.D.N.Y. 2019).

### III. DEFENDANTS' BELATED CLAIMS OF SHORTCOMINGS IN PLAINTIFFS' RULE 26 DISCLOSURES ARE MERITLESS AND COULD NOT BAR RECOVERY OF DAMAGES (OR CLASS CERTIFICATION) IN ANY EVENT

Defendants argue that "plaintiffs are barred from presenting damages evidence at this point due to their failure to comply with FRCP 26(a)(1)(A)(iii) disclosures." Opp. Br. 14.[13] This claim is factually incorrect. Plaintiffs made a Rule 26 submission on November 10, 2006. Indeed, defendants attach that submission to their motion papers. Weinblatt Decl. Ex. A.[14] Moreover, defendants are wrong on the law in contending that the Court could impose the drastic sanction of precluding damages (indeed for an entire class) based upon this alleged failure to produce damages disclosures for named plaintiffs.[15] Since plaintiffs supplied the information

---

[13] If this argument had merit, defendants should have advanced it in their first summary judgment motion or their second, but they never did. *See* ECF # 143 and # 185. They did not advance this argument on appeal either. Thus, any such argument has been repeatedly forfeited. *Fogel v. Chestnutt*, 668 F.2d 100, 108-09 (2d Cir. 1981), cert. denied, 459 U.S. 828 (1982).

[14] Defendants did not agree with the theory of how damages might be calculated in that submission and raised objections at various times before Magistrate Judge Peck, who also questioned plaintiffs' calculus. Finally, at a conference on January 16, 2007, which focused mostly on whether plaintiffs could depose then- Chair Daus, defendants raised the issue again. Because this conference was in-person, Judge Peck was able to review (for the first time) the documents plaintiffs had submitted. After he reviewed the documents, there was some colloquy about what they said. At the end, Judge Peck stated, "[S]o I think you now have what you need, correct, via the transcript?" Defendants' counsel answered: "Yes, your Honor." Ackman Decl. Ex. A. Thus, the matter was dropped without any motion practice. Moreover, on October 15, 2015, plaintiffs updated their Rule 26 disclosure, adding the earnings of particular plaintiffs that defendants had demanded. Ackman Decl. Ex. B. This was five years before any damages trial.

[15] Before precluding damages evidence, a court must look at the actual difficulties the violation caused and consider less drastic remedies. *Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir.1988). A failure to disclose can be considered harmless, so long as the opposing party has an opportunity to depose the witness before trial. *L-3 Communications Corp. v. OSI Systems, Inc.,* No. 02 Civ, 9144, 2006 WL 988143, at *4 (S.D.N.Y. April 13, 2006). Here, defendants could

years ago, and since defendants made no effort to obtain it on their own, there is no basis for defendants' demand for the most drastic remedy.

### IV. BOTH THE PROPOSED CLASS REPRESENTATIVES AND THE PROPOSED COUNSEL ADEQUATELY REPRESENT THE CLASS

#### A. The Proposed Class Representatives are Typical and Adequate

When plaintiffs moved for class certification in 2006, defendants did not claim that Jonathan Nnebe, Eduardo Avenaut, Khairul Amin would not fairly and adequately protect the interests of the class. Indeed, when opposing plaintiffs' request in 2017 for leave for to move to allow two recently-suspended drivers to intervene as plaintiffs, defendants said that the existing plaintiffs were capable of representing the proposed intervenors. In a March 17, 2017 letter, ECF # 392, defendants wrote:

> Mr. Barman's interest in the outcome of this Litigation is based on his status as an active licensed taxicab driver and the impact that TLC's suspension policy has upon this license. **This interest is adequately protected by the named plaintiffs**, Mr. Amin and Mr. Avenaut, who also are active licensed taxicab drivers impacted by TLC's suspension policy. (emphasis added)

Now defendants assert, without any basis or further elaboration, that the named plaintiffs' claims are not "common to and typical of those of the proposed class." Opp. Br. 1. But defendants cannot deny that each of the named plaintiffs, like every one of twenty thousand-plus drivers suspended during the class period, was given a constitutionally defective hearing notice and denied any opportunity for a fair hearing. Their claims are the same as all class member claims. Certainly, their claims "arise from the same course of conduct that gives rise to claims of other

---

have deposed the named plaintiffs about their earnings but chose not to do so. They also could have asked the owners of plaintiffs' taxis for their trip sheets, as drivers were obliged to maintain them and owners were obliged to keep them for three years. *See* TLC Rules 2-28 & 1-56, which were in effect in 2006 and 2007. Ackman Decl. Ex. C. Defendants did not do that either.

8

[absent] class members and [their] claims are based on the same legal theory," which is the hallmark of typicality. *Marisol A. By Forbes v. Giuliani*, 126 F.3d 372, 376 (2d. Cir 1997).

Defendants also suggest that these individuals are not interested or not informed about this action. They have no basis for this assertion. Defendants cite no testimony suggesting the named plaintiffs are ignorant and no evidence that any of them is unreliable. All the named plaintiffs except Avenaut demanded post-suspension hearings. Amin and Avenaut testified at trial. Nnebe appeared and was willing to testify if called. Absent class members are also represented by the Taxi Workers Alliance, NYC's leading taxi driver advocacy and an affiliate of the AFL-CIO. NYTWA Mission and History, http://www.nytwa.org/mission-and-history/

Rule 23(a)(4) entails the consideration of two issues: 1) whether plaintiffs have interests that are antagonistic to class members, and 2) whether the plaintiffs' attorneys will vigorously prosecute the action. *Marisol A.*, 126 F. 3d at 378; *In re Drexel Burnham*, 960 F.2d at 291 (2d Cir. 1992). Defendants do not assert any conflict. Meanwhile, the *Nnebe* plaintiffs have been vigorously prosecuting this action for 14 years. Defendants, for their part, offer no law to support their apparent theory that plaintiffs are required to present new sworn statements demonstrating updated knowledge of the litigation. In the end, it is clear that defendants' attacks on the adequacy of the named plaintiffs reflect not a concern that they will not properly protect absent class members, but instead the defendants' desire that no class be certified, and thus no class members receive a remedy in this case.

### B. With Respect to Adequacy of Counsel, Defendants' Attacks on Attorney Ackman are Unfounded and Defendants Do Not Dispute that Liss-Riordan and Goldberg Will Adequately Represent the Class

As Judge Swain wrote, "[P]ermitting defendants to police the adequacy of class representatives and their counsel is like permitting a fox . . . to take charge of the chicken house." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012). In appointing class counsel, Rule

9

23(g) requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience" in handling similar claims; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class." Tellingly, defendants mention none of these factors. It would seem clear that counsel, having litigated this case for 14 years and having won two appeals, have demonstrated knowledge of the law and have committed abundant resources to the case. While defendants apparently concede, and certainly do not dispute, that Ms. Liss-Riordan and Mr. Goldberg will adequately represent the class,[17] defendants offer a spirited critique of Mr. Ackman's abilities. As set forth in Ackman's Reply Declaration, these attacks are trivial and, with one minor exception, factually false. In sum, defendants fail to disprove the adequacy of the named plaintiffs or their counsel.

## CONCLUSION

For the reasons stated here and in plaintiffs' moving brief, plaintiffs' motion for class certification should be granted.

DATED: September 11, 2020
      New York, NY

Respectfully submitted:

/s/_____

| | | |
|---|---|---|
| Daniel L. Ackman | David T. Goldberg | Shannon Liss-Riordan |
| Law Office of Daniel L. Ackman | Donahue, Goldberg, Weaver & Littleton | Lichten & Liss-Riordan, P.C. |
| 77 Water Street, 8th Floor | 99 Hudson Street, 8th Floor | 729 Boylston Street, Suite 2000 |
| New York, NY 10005 | New York, NY 10013 | Boston, Massachusetts 02116 |
| Tel: 917-282-8178 | Tel: 212.334.8813 | Tel: 617-994-5800 |
| d.ackman@comcast.net | david@donahuegoldberg.com | sliss@llrlaw.com |

---

[17] Plaintiffs set forth counsels' qualifications in the moving brief, but defendants protest that they did not submit declarations or CVs. While this is not required, counsel attach declarations here, including further information on their backgrounds and experience.