| | | |
|---|---|---|
| Daniel L. Ackman | Shannon Liss-Riordan | David T. Goldberg |
| LAW OFFICE OF DANIEL ACKMAN | LICHTEN & LISS-RIORDAN, P.C. | DONAHUE & GOLDBERG, L.L.P. |
| 26 Broadway, 8th Floor | 729 Boylston Street, Suite 2000 | 240 Kent Ave. |
| New York, NY 10004 | Boston, Massachusetts 02116 | Brooklyn, NY 11249 |
| Tel: 917-282-8178 | Tel: 617-994-5800 | Tel. 212-334-8813 |
| dan@danackmanlaw.com | sliss@llrlaw.com | |

October 3, 2022

**By ECF & EMAIL:**
Hon. Richard J. Sullivan
United States District Court (sitting by designation)
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re: <u>Nnebe v. Daus, 06-CV-04991 and Stallworth v. Joshi, 17-CV-7119</u>

Your Honor:

        Pursuant to Local Civ. R. 6.3, Plaintiffs respectfully request reconsideration of the September 27 Order denying plaintiffs' request that defendants be required to disclose individual class member phone telephone numbers sought through discovery. The Court based its denial of the request, not on the rules of discovery or on the objection lodged by defendants. Instead, the Court emphasized that plaintiffs had not sought the information earlier when distributing class notice. Respectfully, that is not ground for excusing defendants from their discovery obligations, and denial of access to our own clients' phone numbers will cause a clear injustice.

## Background

        It is routine for a Class Notice to be disseminated in writing only. Indeed, plaintiffs' counsel did not attempt to reach out to communicate to the class, other than by court-approved notice, prior to the class being finally determined, which occurred when the opt-out period closed. Once the class was fixed, plaintiffs propounded discovery requests, seeking a variety of information regarding class members, including phone numbers to assist with counsel's affirmative efforts to inform class members about their right to a hearing.

        As set forth below, plaintiffs have been diligently attempting to reach class members to inform them of this right. But using mail and the email addresses we have been given (for only about half the class) is not sufficient. Many of the addresses we have are more than a decade old or are no longer valid. As we pointed out in our previous letter, it is routine for defendants to produce (and courts to order the production of) phone numbers of class members, even before certification. Now that certification has occurred and class members' right to a hearing depends on their taking affirmative steps to request one, it is vital that plaintiffs' counsel be given full ability to contact their clients.

**Grounds for Reconsideration**

While the standard for granting a motion for reconsideration is strict, it should be granted "where the moving party points to controlling decisions or data that the court overlooked— matters that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995); *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (JGK), 2022 WL 2666018, at *1 (S.D.N.Y. July 11, 2022). Alternatively, a reconsideration motion may be based on the necessity to remedy a clear error of law or to prevent obvious injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992); *Sw. Marine & Gen. Ins. Co. v. United Specialty Ins. Co*., No. 19 CIV. 8857 (ER), 2022 WL 3904096, at *1–2 (S.D.N.Y. Aug. 30, 2022), *City of Almaty*, 2022 WL 2666018, at *1.

We submit that the controlling law is Fed. R. Civ. P. 26(b)(1), which provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Defendants did not make any objection that the phone numbers were not relevant. Nor did they raise an objection that the request was burdensome or "[dis]proportional." (The information sought is entirely in their possession and can be gathered with the proverbial touch of a button.) Nor did they point to any federal evidentiary privilege barring disclosure of individual identifying information. (They had already produced names, addresses, and arrest charges of these individuals, and they would have no standing to assert "privacy" interests of parties who are adverse to them *in this case*, let alone against those parties' Court-appointed counsel.) *Cf.* Fed. R. Evid. 501 (state law privileges apply in federal court only when claim arises under state law). Nor did they contend that plaintiffs' counsel's existing methods of communicating with individual clients were adequate. Instead, their objection was based solely on NYC Administrative Code § 23-1202(c). The parties' joint letter focused on this singular objection.

The Court, finding no validity to the § 23-1202(c) objection, excused defendants' noncompliance, on the ground that "Plaintiffs have not persuasively shown that their current methods for reaching out to class members which Plaintiffs and Defendants themselves proposed as sufficient to disseminate Class Notice (Doc. No. 541 at 4) is inadequate to initiate communication with class members regarding hearings on compensatory damages."

This ruling introduces a new and different controlling law, that a party must "persuasively [show]" that discovery is necessary. But this is not the standard of the Federal Rules. The Rules do not require that the requested discovery be for the best evidence or necessary, important or even admissible evidence. The request need only be for relevant, nonprivileged information, a standard defendants tacitly concede was met here.

Because defendants did not argue that plaintiffs were required to show that the "methods for reaching out to class members" at the notice stage were "inadequate," plaintiffs did not attempt to demonstrate compliance with this standard. Because the Order was *sua sponte*, this motion is not an attempt to relitigate old issues or to present new theories. *See, e.g., Analytical Surveys, Inc. v. Tonga Partners, L.P*., 684 F.3d 36, 52 (2d Cir. 2012). Instead, it is a request to argue a legal point never before raised and to state facts that had never been put at issue, in order to prevent a legally erroneous and unjust result.

Had the adequacy *vel non* of "current methods" been at issue, we would have detailed our substantial and repeated efforts: A team of lawyers and paralegals at Lichten & Liss-Riordan, P.C., highly experienced in matters of this kind, sent 19,496 mailings to all class members. They have also sent multiple rounds of emails to the 9,000 class members for whom defendants have provided email addresses. In doing so, we have learned that thousands of mailing addresses have proven to be incorrect or out-of-date. More than half the emails sent have not been opened or have bounced back. Of those class members who responded, none have indicated they do not want a hearing. The problem we have, and it is a serious problem, is that many class members, who have received at most just one prior communication about the class action lawsuit, have not received a follow-up letter notifying them about individual hearings. Those who have received it—who may have been suspended more than a decade ago, and who do not recognize the return address on the envelope or the email's sender— often do not open the letter or the email. Thus, many class members, all of whom have a right to a damages hearing, have not responded either way.

In addition, while both plaintiffs and defendants did say that mail and email would be sufficient to disseminate the Class Notice, no party contended that those methods would be enough to ensure effective communication with drivers about their rights and obligations to affirmatively request a hearing. As a matter of common experience, it is more difficult to get someone to read a notice *and* take action than to take notice alone. And the risks—and potential for injustice—are not remotely comparable. An individual who, through inadvertence, neglects to formally opt out of the class is no worse off. But anyone who has a viable damages claim that he *would have pursued* if fully informed is gravely harmed. And counsel have a corresponding responsibility to ensure that these individual clients, who have suffered a proven constitutional violation, have an opportunity to make an informed decision about exercising their rights.

Had defendants offered an "already adequate" objection or had the Court given notice of its view, we would have relayed these facts in our response. But because we could not have anticipated the grounds for the Court's ruling, we did not do, causing the Court to overlook the critical facts—which we had no reason to present before now. Because the September 27 ruling overlooked both the controlling law and factual matters critical to its newly announced standard, reconsideration of that ruling is necessary to avoid a serious injustice.[1]

Respectfully submitted,
/s/
Daniel L. Ackman
David T. Goldberg
Shannon Liss-Riordan

cc: All Counsel (by ECF & Email)

---

[1] As explained in our previous submission, once the telephone numbers are produced, plaintiffs' deadline for producing the list of drivers requesting hearings should be adjusted, to enable the additional thousands of attorney-client communications to occur.